Mr. Pena appeals from the District Court's summary denials of his motion to disclose recusal information and also the motion to clarify the reasons for that denial. Mr. Pena's motion to disclose was based on the recusals over the course of at least four years of the U.S. Attorney's Office for the Western District of Texas from aspects of the case against Mr. Pena. During that time, the Office for the Western District U.S. Attorney's Office did secure a conviction against Mr. Pena and a restitution order of over $800,000. Ms. Kimmelman, of course, we're very concerned about or interested in, as always, jurisdiction. And I have not seen the motion that Pena filed on his original appeal in which he asked our court to stay the proceedings in the original appeal in order for this appeal to proceed. And, of course, our court, in its opinion, ruled that the appellate waiver, appeal waiver, precluded his first appeal and then at the very end said, and we deny the motion to stay so that the second appeal can go forward. Is that some sort of preclusive or doesn't that, the fact that our court would not stay its appeal, in a way, indicate a lack of jurisdiction for this second appeal? I don't believe so. The court denied the stay presumably because it did not think that the case supplemented if, indeed, the disclosure of this information resulted. I'm sorry, that was my question. Well, what was stated in that motion asking the appeal and the first appeal be stayed? That the underlying motion to compel this information could result in information that would question whether or not the appeal waiver is applied to Mr. Pena's case if, for example, there was a discovery of prosecutorial misconduct of a constitutional nature, then Mr. Pena could have supplemented, filed a motion for leave to supplement that initial appellate brief, also asserting that the appeal waiver did not apply for that reason. Mr. Pena asserted other reasons in his direct appeal as to why the appeal waiver did not foreclose that argument, but stated in the motion to stay that appeal, and so it was that we're trying to get some more information that possibly would supplement the record. Any other basis for staying the appeal? I believe that was the only basis for staying the appeal, and I can double check. And, of course, your notice of appeal both challenged the judgment and the restitution order. Correct. And then in your first appeal, you just simply elected to challenge the restitution order, but your notice of appeal did cover the judgment and the judgment of conviction. Yes. So why would the district court have had jurisdiction over this motion while the appeal was pending? And let me back up a second. As I understand it, the district court ruled by way of a text order. Correct. And as I understand it, the docket only shows motion denied and then motion reconsider denied, but there's no actual paper document for the text order. Correct. Is this some new procedure being used in this particular district court to issue orders by text? It is not uncommon for that district court to issue orders by text that don't include other factual findings. Is this particular district judge or all of the judges in that district? I am not aware of other judges in that district using text orders for substantive motions such as this one. Certainly for motions to continue in such, text orders are common, but not on a motion to compel disclosure information. Are those eventually printed out and put in the record some way or another? If the only thing is a text order, there is no other document to be printed out and included in the record. The only order is the language that appears in the electronic docket. And the docket says motion to supplement denied or something like that. Right. The only record of the district court's ruling. Correct. Correct. And Mr. Pena argues that the district court had jurisdiction over that motion to compel because it was not an aspect of the case that was on appeal through his notice of appeal of the judgment in the order of restitution. Of course it was. You were challenging the judgment on your appeal. Correct. Challenging the judgment and in the motion to compel disclosure, the legal issue was whether or not the U.S. Attorney's Office had to disclose that information, which potentially is related to the judgment, but it is not the same discrete issue that was on appeal through the notice. Why can't you use some other proceeding to challenge, to get the proposed documents you want and then to challenge your judgment, such as a 2255 or something else? Why can't you follow that route? So that route potentially is available to Mr. Pena now if he chooses to do that on his own. At the time that the motion was filed, the appeal was pending and that was the avenue of relief Mr. Pena was pursuing. He wouldn't have filed a petition for 2255 at that time. I understand, but our court would not stay the appeal. Our court went ahead and upheld the judgment, upheld the restitution order. So my question is why are we here? Because of the judicial efficiency of the issue is already teed up for this court's consideration. Whether or not Mr. Pena files a 2255 motion at this point is unknown. If he were to, then he could pursue discovery under that mechanism, but the court's inherent authority to rule on a matter such as this to investigate the apparent conflict of the U.S. Attorney's Office is not somehow barred by the availability at a later date of a habeas petition and discovery under that mechanism. Well, as I understand it, the reason given because you filed a motion to compel prior to taking the the particular lawyer in that district, the U.S. Attorney's Office, might have to be a witness because of comments made by Pena's lawyer to him. That was the first motion to compel filed back in 2013 addressing the pre-indictment recusal, but now we are aware of two other recusals that occurred after the indictment and it is unclear, at least to Mr. Pena, that the same factual basis that gave rise to the recusal pre-indictment also support the recusal post-indictment. Of course, Mr. Pena pleaded guilty after your first motion to compel, didn't he? He did. Yes, so he knew about a possible problem, but he went ahead and pleaded guilty and once again, my concern is about the finality of pleas and the fact that now we're coming up with yet another reason to compel disclosure and it's never-ending. Well, the reason why there is a second motion to compel disclosure is because Mr. Pena learned of recusals that occurred after he entered his plea of guilty and that, so the factual basis of that second motion to compel disclosure is not addressed by that first motion to compel disclosure and so the only reason why the issue was teed up again was because the Department of Justice took the extreme measure of recusing an entire office of its U.S. attorneys from Mr. Pena's case again after they had already instituted the prosecution against him. And after he had pleaded guilty. Correct, he pled guilty pursuant. Before he was sentenced, right? I'm sorry. Before he was, after he pleaded guilty, but before he was sentenced. Correct, he pled guilty to an 11c1c agreement and then about a year later, after the government apparently was recused from his wife's, the co-defendant's case, he was sentenced. Before sentencing, there was no motion to withdraw the plea based on these facts that he had just learned? He did not learn the facts before sentencing and so there was no motion. But he did learn them before sentencing? He learned the, about the post-indictment recusals after he filed his initial brief on the direct appeal. And so that is why we're in this procedural difficulty here of learning about an apparent conflict of interest from the, of the U.S. attorney's office after filing the initial brief in the direct appeal and concerned that this indicates that there was some sort of fundamental flaw in the prosecution against. So tell me again why the proper course then isn't to file once we, if we find no jurisdiction, then file a 2255 motion. That would be an option. Is there anything that would preclude that? Is there anything that would preclude raising this issue on a 2255 motion? Procedurally, no. The court. We're talking about the wording in the statute. 28 U.S.C. 2255. It seems to me to cover exactly what this would be a basis for the motion. Correct. You know, we, we found out something went on and this needs to be investigated. You don't represent Mr. Pena for that purpose, do you? Correct. I do not represent nor do I believe that he would have the right to counsel to, paid for by government for that habeas petition. But that is an avenue he could pursue now in the interest of judicial efficiency, though the matter is already before the court. And if Mr. Pena were to pursue a habeas proceeding, he would then need to ask for the disclosure. You have his authority to The court, the district court then would be faced with a similar question to what it was faced with below, which is whether to disclose this information under the standards provided for in a habeas proceeding, which Mr. Pena believes that he could reach. But given the district court's denial below, which we don't know whether it was because it thought it didn't have jurisdiction or because it was denying the issue on its merits, we could be in the same situation a year or two from now if the district court denies his request for this information in the context of a habeas proceeding. Why do we even have appellate jurisdiction? I believe it is a final order from the district court. So this court has jurisdiction to remand to the district court for findings and remand with instructions to grant the motion to compel. Well, are you saying our appellate jurisdiction is some collateral order exception? I know you claim it's the final order, but the final order was the judgment, which you challenged on appeal. And now you come up with yet another order or two via text. And you're saying that's a final judgment from which you can appeal? I don't believe it's a judgment, but I believe it is a final order on that issue. Well, on that issue, there are plenty of collateral matters that go on in trial courts that we don't allow appeals. So what, do you have some collateral order doctrine you can urge? I do not, but I believe that the collateral matters that arise in the context of a trial before there is a final judgment are not heard by this court because there is no final judgment yet. Here, we're in the strange position of already having a final judgment and then having an issue arise that we believe the district court had jurisdiction to consider and it denied that request. And so that is an order that was final and that would be for this court's consideration. Mr. Pena also believes that if the court had considered it on the merits and that was the doing so, because investigating this appearance of conflict at the U.S. Attorney's Office would certainly be an appropriate use of its inherent authority. Inherent authority is often used for sanctions, attorney's fees vacating judgments, and ordering disclosure, such as during a trial. Do you have any legal authority supporting your allegation of inherent authority by the district court to find out the requested information you're seeking? Well, so in Nobles, the Supreme Court ordered that a disclosure during trial was proper under the court's inherent authority because Rule 16 did not apply, yet it was in the interest of justice in that case that the prosecutor received the defense investigator's notes for cross-examination purposes. Of course, that was in the context of the trial, but the idea is similar. Additionally, Mr. Pena's motion was not speculative because he asked for very discreet things. He asked for the factual basis that were in memos that, according to the U.S. Attorney's Manual, would have been submitted to the General Counsel's Office to secure these recusals and the one rescission that exists. This was after he had pleaded guilty. After his first motion, compelled, denied, then he pled guilty. Correct. And entered into an appeal waiver. Correct. He takes an appeal. Then he comes in while the appeal is pending and wants to compel further disclosure. Because he did not learn about the recusals until afterwards, and it would seem strange to benefit the government for hiding this information from Mr. Pena during the course of the case and then penalize Mr. Pena. Doesn't the government have a duty to tell Mr. Pena what decisions it's making about which attorneys it's going to use, especially when Mr. Pena's attorney had discussions with the U.S. Attorney about which the U.S. Attorney might have had to testify? And that recusal, the basis for that recusal, was already rescinded by the Department of Justice by the time that the indictment was filed against Mr. Pena. It was rescinded, you said? Yes, the pre-indictment recusal was rescinded before the indictment came down, suggesting that that separate conflict existed afterwards. Thank you. Ms. Barringer. Thank you, Your Honor. Elizabeth Barringer from the Western District of Texas on behalf of the United States. I think it would be helpful in this case to perhaps go through a timeline of the events as they occurred because there's only one time in this case where the government, the Western District of Texas, reassigned prosecutors in the prosecution, the criminal proceeding of the defendant, and I think that it's been convoluted as to other recusals and other cases. Is that in the record? The reassignment of prosecutors, there is a little bit in the record where that arises if the court would give me permission. Where in the office are you from? I'm from the Western District of Texas. That was the office that was recused. This is the office that is still handling the criminal proceeding and the appeal for the defendant. In El Paso? Excuse me? In El Paso? Yes, El Paso. I'm from San Antonio, but we cover El Paso. But it's the same office that was recused. Well, initially the case was reassigned to the Western District of Texas, but then that reassignment, it came back to San Antonio. So what happened is in 2009 to 2010, the offense was committed. And then in July 1st of 2010, that's when AUSA Bill Lewis, he's a prosecutor who at that time was in El Paso, he has a conversation with William Stanton, who is the defense counsel in this case, and he says, that money that was just transferred to your account, he had a personal relationship with he knew of Mr. Stanton. And he said, this money is criminal proceeds. I just want to warn you, don't spend it. And that conversation, that one conversation and a follow-up letter, is what led to the conflict in this case. And the conflict, of course, is Mr. AUSA Lewis is now a witness if this case goes to trial against Stanton. And that is the conflict. This is not a personal interest. It's the conflict of you can't be a prosecutor and testify in the same case. So that's the conflict. Well, the Department of Justice made a decision within its discretion at that point. In July 24th of 2012, they reassigned the proceedings because at that time they were investigating Stanton to the Northern District of Texas. But then the Northern District of Texas opted not to charge Mr. Stanton. And then the case was transferred back to San Antonio because the conflict was no longer a conflict. He was no longer a necessary witness. The crime itself, Mr. Lewis's conversation with Mr. Stanton didn't have any probative value to the charges against the defendant. It's not relevant to any element of any charge. It occurred after the crime had already been completed. Who made that determination? That's the Department of Justice itself. Did they file anything to that effect? We didn't file anything. So once the defendant was indicted in February of 2013, in November requested disclosure in it. And then our response in December of 2013 to that request for disclosure, we attached both the recusal order from the Department of Justice from the counsel's office and we attached the rescission. And then AUSA Lewis provided the dates of those in his motion. That's page six of his response. How was all this done in response to his motion to disclose and his motion to clarify? Why was it done in response to it? I mean, AUSA alerted the counsel about this before, which is what prompted the motion in the first place. So AUSA Lewis informed both parties that there was this reassignment and then non-reassignment, which I'm not sure if they would have been aware other than him alerting them. And that's what prompted the motion for disclosure of these documents. That was decided and denied by the judge before he pleaded guilty. It wasn't denied. The motion was withdrawn purposely for strategic reasons by the defendant. He asked the court not to rule on it because he wanted the very government was offering, which did not hold him accountable for the charges involving the William Stanton deposit. So he was basically sentenced to time served when he faced a much larger sentencing range as a result of this plea agreement. So he jumped on it. He waived all pending motions. So on 8-19, after this followed that disclosure hearing. So in March of 18th of 2014, that was the hearing where the defendant stood up, his counsel stood up and said, I know I have this motion pending, but I am in negotiations with the government, and I do not want you to rule on this motion. And the court said, okay, I'll hold it. You let me know if you want me to engage with it at this point. And then in August, which is five months later, he pleads guilty. And in that plea agreement, he waived right to any additional disclosure. Fully aware of the conflict, fully aware of it, pleads guilty and waives his right to any additional disclosure. He said that in court? It's in the plea agreement. In the plea agreement, it says any additional disclosure. He also waived at that time, according to the circuit's precedent, he waived all pending motions, which includes that motion to compel disclosure by virtue of that guilty plea. And then two months later, this is when the Department of Justice reassigns Melissa Pena's prosecution. This is not a court-ordered recusal. This is the Western District of Texas, in exercise of its prosecutorial discretion, deciding to reassign a co-defendant's case with a different procedural posture to other prosecutors. And then in the following January 2005, she enters into a pretrial diversion agreement with the Northern District being the prosecutor's office. The total recusal of the Western District, when was that undone? Oh, that was undone on, according to the response that the government filed, that was done on November 1st of 2012. So that was pre-indictment. It was almost, it was maybe three months before the... Is that legally appropriate? What? Is that legally appropriate for an entire district to recuse itself? I mean, the U.S. Attorney's Office. And then just say, oh, forget it, you know, take it back. Well, it certainly wasn't required, the recusal, in the first place. Under the ethical rules and under the law, at this procedural posture, there wasn't any sort of necessary recusal. If someone had petitioned a court to recuse them, it wouldn't have met the standard. It was merely the Department of Justice's prosecutorial decision-making authority. You know what? We're going to be conservative in this case. We're going to assign different prosecutors to this case to handle this because of the potential that one of our attorneys in this office could be called to testify. It was very conservative. It was not required. It was just a prosecutorial decision that was in the interest of justice. Is it revocable at will by the head attorney? It is permitted by the Department of Justice regulations, the rescission of a recusal order. But it's not something that was court-mandated. It's not something that the law determines. It was all its own internal decision-making authority under its broad discretionary powers as an executive branch prosecutor. Ma'am, as you continue with your chronology here, I believe you said that the decision was made about prosecuting the wife in 2005. Did you mean 2015? Oh, I'm sorry. I did mean 2015. I apologize for that. So then 10 months later, after the wife and her separate proceeding was entered into a pretrial diversion agreement, the defendant is sentenced. Then in January of 2016, there was a restitution order. From this restitution order, a notice of appeal was filed, which mentioned both the criminal judgment itself and the order of restitution, and conferring jurisdiction to the appellate court on those issues. In July of that year, 2016, the defendant files his opening brief. A few days later, after he files his opening brief, this is not in the defendant's criminal proceeding. This is the financial litigation unit, who is now proceeding under the 18 U.S.C. 3612 recovery of the restitution order. So this is a separate recovery of the restitution proceeding. They reassign prosecution in that case to the Northern District of Texas. So that is not in the defendant's criminal proceeding. This is in the restitution order regarding the collection of the restitution proceedings. Now, to reveal the factual basis for this change of prosecutors would reveal the government's enforcement strategy. But what I can say is that it does relate to Stanton's conversations with people in the office, and also that under the restitution 3612 and the case law supporting that, not only can we go get the restitution from the defendant, but we can also go after any property that was stashed with nominees. Do you mean like when the lawyer paid himself? Perhaps hypothetically. Recovered? I mean, at this point, it's sort of in the process of it, and also that is sort of what the government believes is sort of privileged information. Our deliberative processes and how we're going after particular assets would reveal enforcement strategy. They decided not to indict him? They did not indict him because Northern District did not indict him. Did not indict him. So after, in that separate legal proceeding, and was assigned to the Northern District of Texas, the briefing schedule is completed in the fall of 2016, and by September 6th of 2016, the defendant files the reply brief, and then in October 7th of 2016, despite pleading guilty and waiving all disclosure, files a second motion for disclosure with the district court. Of course, in March of 2017, the case is dismissed. When did he also file the motion with our court to stay the appeal? I would have to look up that date. Approximately the time he filed the motion to disclose in district court. I believe it was after that motion was denied, and after that this case had already been appealed, he filed the motion to stay. I believe that's accurate, but I would have to review the record for that. So then in March 18th of 2017, this court dismissed his appeal, and on May 12th of 2017, the mandate was issued. In August 10th of 2017, the time for filing cert had expired. So at this point, this case is over. It's over. This case is moot. There's no longer a criminal proceeding for this discovery motion to aid. By this case, you don't mean this appeal. You mean the original judgment? The original judgment is over, thereby mooting all sort of collateral appeals relating to the judgment. That is the government's position. Any argument that this case is alive, even, is assuming that the defendant is entitled to this discovery, which he is not. Under the Chevron standard, he has to show a substantial possibility that the court could still remedy his situation, and in this case, he's never articulated any authority that would entitle him to internal Department of Justice memorandum discussing this, and in fact, the case law is to the contrary, that Armstrong shows that you must show clear evidence to the contrary. Unless you show clear evidence to the contrary, courts will presume that the government has properly discharged their duties. There is no clear evidence that the government has somehow violated its duties in this case. If anything, they were overly conservative in the ways that they have handled the reassignment of prosecutors in this case. Tell me why we do not have appellate jurisdiction. This court lacks appellate jurisdiction because the case is moot. This case, there's no longer a live controversy that the discovery would aid. The mandate has already issued. Are you conceding they're appealing from a final order for 1291 purposes? I don't concede that. Ma'am? I don't think that the court had any jurisdiction. Why don't you rely on that? I don't know that I've seen any case law. What's the stronger argument than this case is moot? I think the mootness is a pretty strong argument. I agree that, well, I'm sorry, maybe I misunderstood. I don't think that the district court had jurisdiction to hear the order. Is that what you're asking? No. Why do we even have appellate jurisdiction from this appeal from the denial of a motion to compel? Well, for the reasons stated in our letter brief, we don't believe the district court had jurisdiction, and so we clearly, you wouldn't have jurisdiction. No, ma'am. I want to know, under 1291, what basis can they even appeal that judgment, that order to us, whether it's right or wrong? What's the basis they can appeal that separate order denying, twice denying their motion to compel? I'm not aware of any authority that would permit it. Just to address the, briefly, the government's, the court's inherent power to do that, the government believes that that is not, the district court did not have an inherent authority to grant post-conviction relief for this type of material. The Supreme Court in Osborne has said that there's no due process right to post-conviction discovery, and this court is clear that there's not open file discovery. So, not only with the procedural posture of the case being post-conviction while the judgment is being convicted, but also the types of documents there that are being requested, on both, on both cases, there's clear precedent contrary to this request, and there isn't any precedent that has allowed this sort of documentation. It's the government's belief that if the court had granted this disclosure order, the government would be able to appeal this as an abuse of the court's discretion. And I would just like to end by noting that the, the conflict of this case did not at all affect the defendant's rights. There's no evidence in this case that the assignment of AUSA Lewis to the defendant's case affected any sort of right of the defendant, especially there was no proceeding that AUSA Lewis testified at. There was no, he was never an actual or potential witness against the defendant. The only relevant conflict is that one conversation and, and follow-up letter that Lewis had with Stanton in this case. There's no nefarious government misconduct in this case there's, that's been alleged in the briefs. This is simply the government trying to exercise its authority in a fair manner to avoid the appearance of any conflict in this case. If the court doesn't have any further questions, I would cede my time. Thank you. Mr. Pena appreciates the testimony of the Assistant U.S. Attorney regarding the reasons for the various recusals. Conspicuously absent, yes, again, yet again, was an explanation for the recusal of the entire office of the Western District of Texas from Mr. Pena's co-defendant's during the same time that his sentencing was pending before the district court. And that co-defendant was, of course, his wife. They share intimately their things and they are also business partners in the business that was at issue. And so it is still unclear to me, despite the Assistant U.S. Attorney's representations, how there could be an appearance of a conflict as to whether or not there was. She was indicted at the same time as Mr. Pena in the same four counts, two of those counts related to the theft of public funds, which is the exact same issue, the money at issue in that conversation between AUSA Lewis and Stanton. So I believe it would be incorrect to say that there was not an element of the crime that turned on that conversation. She was permitted to go into some sort of coercion program? Correct. And she completed that. What sort of plea did she enter in order to obtain that relief? I'm sorry, I didn't hear the question. What sort of plea did she enter in order to obtain that relief, i.e. not being incarcerated? It was a pretrial diversion. The contents of that are not available to Mr. Pena. So I'm unaware of what, you know, if she debriefed, if there was some other sort of untoward conduct that led to that resolution. I do not know. All I know is that I still cannot fathom the logical explanation for, even in and out of the abundance of caution, recusing from Mrs. Pena's case and pursuing against Mr. Pena, particularly when the plea agreement explicitly left the idea of restitution, of how much restitution, if any, open, and it was subject to a contested hearing, restitution 2016. Do you agree that his plea included a waiver of the right to any additional disclosure? It did include that. My reading of the plea agreement was that it contemplated traditional discovery during the regular course of life of a case and did not go to this use of inherent authority post-conviction. I would also like to point out that Mr. Pena's motion to compel Mr. Pena, even if he did not get the information, he thought that there needed to be some court intervention to at least say there was not any untoward conduct here. Yes, it looks strange for these recusals to be going on, especially when Mr. Pena's convictions from his 2009 cases were reversed by this court and remanded to a different district judge because of the initial district judge's improper insertion into the plea negotiations in those cases. There needed to be some sort of inquiry to dispel the cloud that hangs over Mr. Pena's conviction because having an interested prosecutor, which is what these discretionary recusals suggest, really goes to fundamental fairness of the prosecution of Mr. Pena and casts doubt in the faith of the system. Just a few minor matters. I believe counsel said that the recusal for Mrs. Pena was in 2015, but I believe that was actually in 2014 before Mr. Pena was sentenced. What relief do you seek now? We seek vacation of the district court's denials and remand to the district court, either to grant the relief requested or, at a minimum, for the court to entertain the motion on its merits, enter factual findings and legal conclusions that will then allow this court to perform its supervisory role in review of that court's decision. Now, there is this question of how was Mr. Pena harmed by these recusals. There is the fundamental harm of a system that, it appears, had a conflicted prosecution during the course of the whether to charge a crime, how much, what to charge, what to negotiate, what information to disclose, and that information is difficult to get to, but it appears that there was a harm here. Thank you.